IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID BALES,

    Plaintiff,

vs.                                                  Civ. No.  07-1024 JP/RLP

CHICKASAW NATION INDUSTRIES,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On March 31, 2008, Defendant filed Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 9) based on tribal sovereign immunity. On June 13, 2008, the Court informed the parties by letter that on March 19, 2008 the Tenth Circuit heard oral argument in *Native American Distributing, et al. v. Seneca-Cayuga Tobacco Company, et al.*, 546 F.3d 1288 (10th Cir. 2008)(hereinafter referred to as *NAD*), a case discussing tribal sovereign immunity with respect to an Oklahoma tribal corporation. The Court also gave the parties an opportunity to supplement their briefs to address the significance of the Tenth Circuit's decision in *NAD*.[1] The parties, in fact, filed supplemental briefs. *See* Doc. Nos. 24, 25, and 26. Having considered the briefs (including the supplemental briefs) and the relevant law, the Court concludes that the motion to dismiss should be granted and that this lawsuit should be dismissed for lack of subject matter jurisdiction.

---

[1] Moreover, the Court vacated the August 27, 2008 hearing on the motion to dismiss pending the Tenth Circuit's ruling in *NAD*. Defendant in Defendant's Supplemental Brief in Support of Defendant's Motion to Dismiss (Doc. No. 24) at 2 subsequently states that it "would not oppose issuance of a decision on CNI's Motion without oral argument." Plaintiff has not asked for oral argument in his supplemental brief. Consequently, the Court will not reset the hearing and will decide the motion to dismiss on the briefs.

*A. Background*

The Plaintiff, a non-Native American, brings this employment discrimination lawsuit against Defendant, a corporation wholly owned by the Chickasaw Nation of Oklahoma doing business in New Mexico. Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, as amended; the federal Age Discrimination in Employment Act (ADEA); and New Mexico common law. *See* Complaint for Damages From Race Discrimination, Age Discrimination, Sex Discrimination, Breaches of an Implied Contract of Employment and Constructive Discharge (Doc. No. 1) at ¶1, filed Oct. 9, 2007; Plaintiff's Response to Defendant's Motion to Dismiss For Lack of Subject Matter Jurisdiction (Doc. No. 15) at 1, filed May 1, 2008.

Defendant was federally chartered as a Chickasaw Nation tribal corporation under 25 U.S.C. §503, a provision of the Oklahoma Indian Welfare Act (OIWA) permitting Native American tribes or bands in the state of Oklahoma to request from the Secretary of the Interior a charter of incorporation. *See* Certificate of Good Standing and Compliance for Federally Chartered Tribal Corporation, Defendant's Ex. 1 (attached to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction).[2] Section 503 allows a charter of incorporation to convey to the tribal corporation the right "to enjoy any other rights or privileges secured to an organized Indian tribe under the Act of June 18, 1934 (48 Sta. 984)[25 U.S.C. §461, et seq.]...." Native

---

[2]When the Court is faced with a challenge to the factual basis for subject matter jurisdiction, as it is in this case, the Court does not presume that the complaint contains truthful allegations and can in its discretion examine evidence presented outside of the complaint "'to resolve disputed jurisdictional facts under Rule 12(b)(1).'" *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1303 (10th Cir. 2001)(quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). Furthermore, the parties have requested that the Court take judicial notice of certain facts contained in their exhibits. Under Fed. R. Evid. 201(d), the Court is required to "take judicial notice if requested by a party and supplied with the necessary information." Considering its discretion to examine evidence outside the complaint and the applicability of Rule 201(d), the Court will consider the parties's exhibits in deciding the motion to dismiss.

American tribes from other states can likewise petition the Secretary of Interior to issue a charter of incorporation under 25 U.S.C. §477.

The purpose of the Defendant is to engage in activities "for which corporations maybe organized under the Oklahoma Indian Welfare Act; ... [t]o promote the economic development of the Chickasaw Nation; and ... [t]o enable the development of tribal resources for the benefit of the Chickasaw Nation." Art. II of the Charter of Incorporation, Defendant's Ex. 1. *See also* Art. V, ¶5.01 of the Charter of Incorporation ("This Corporation is wholly owned by the Chickasaw Nation for the benefit of the Chickasaw Nation and its citizens and this ownership shall be inalienable."), Defendant's Ex. 1. Article I, ¶1.03 of Defendant's Charter of Incorporation also states that

> [t]his Corporation is a distinct legal entity pursuant to 25 U.S.C., Section 503 wholly owned by the Chickasaw Nation and its corporate activities, transactions, obligations, liabilities and property are not those of the Chickasaw Nation. <u>Nothing in this charter shall be deemed to have waived or to permit the Corporation to waive the sovereign immunity from suit</u>....

Defendant's Ex. 1 (emphasis added). Article III, ¶3.02 of the Charter of Incorporation further addresses tribal sovereign immunity by stating that Defendant is empowered:

> To sue in its corporate name and, <u>notwithstanding the immunity possessed by the Corporation as a wholly owned corporation of the Chickasaw Nation</u>, to permit by written resolution of the board of directors enforcement of leases, contracts, agreements and mortgage instruments to which the Corporation is a party, against the Corporation in tribal court, or any court of competent jurisdiction by agreement of the board of directors; provided, however, that this <u>limited waiver of sovereign immunity</u> does not authorize the levy of any judgment, lien, garnishment or attachment upon any property or income of the Corporation, the Chickasaw Nation, or any agency thereto, other than property or income of the Corporation specifically and in writing duly mortgaged, pledged or assigned as collateral for the debts or liabilities of the Corporation related to the lease, contract, agreement or mortgage instrument to be enforced. <u>The authority provided herein is not intended to nor shall it be construed to waive the immunity of the Corporation, the Chickasaw Nation, or any agency thereof, for any other purpose with respect to any claim or other matter not specifically mentioned herein, and is not intended to, nor shall it extend to the benefit of, any person other than the parties to such leases,</u>

   contracts, agreements or mortgage instruments or their successors or assigns.

Defendant's Ex. 1 (emphasis added).

*B. Discussion*

   Defendant argues that tribal sovereign immunity bars this lawsuit because Defendant, a §503 corporation, is wholly owned by a federally recognized tribe. Defendant also argues that tribal sovereign immunity over the Title VII and ADEA claims has not been unequivocally waived by the Chickasaw Nation and Congress has not unequivocally abrogated tribal sovereign immunity with respect to those statutory claims. The party who seeks to invoke federal jurisdiction, in this case the Plaintiff, bears the burden of establishing that federal jurisdiction is proper. *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir.1994). Tribal sovereign immunity is a matter of subject matter jurisdiction which can be challenged in a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998); *St. Stephen's Indian High School*, 264 F.3d at 1302. Tribal sovereign immunity can be waived only if a tribe unequivocally waives its tribal sovereign immunity or Congress unequivocally abrogates tribal sovereign immunity. *St. Stephen's Indian High School*, 264 F.3d at 1304 (quoting *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997)). Furthermore, the courts construe statutes liberally in favor of Native Americans. *Montana v. Blackfeet Tribe*, 471 U.S. 759, 766 (1985).

> *1. Does Defendant Enjoy Tribal Sovereign Immunity Due to its Status as a §503 Corporation Wholly Owned by the Chickasaw Nation?*
>
> > *a. Application of Tribal Sovereign Immunity when a Non-Tribal Plaintiff Brings Suit against a Tribal Commercial Enterprise Operating in the Open Market Outside of Tribal Lands*

Defendant contends that it enjoys tribal sovereign immunity because it is a §503 corporation wholly owned by a tribe. Plaintiff argues, however, that tribal sovereign immunity does not bar lawsuits brought by non-tribal plaintiffs against tribal commercial enterprises operating in the open market outside of tribal lands. To support this argument, Plaintiff cites to *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir. 1985); *Chickasaw Nation v. United States*, 1998 WL 975690 (E.D. Okla.); *Myrick v. Devil's Lake Sioux Manufacturing Corp.*, 718 F.Supp. 753 (D.N.D. 1989); and *Roberson v. Confederated Tribes*, 103 L.R.R.M. 2749 (D. Or. 1980). Additionally, Plaintiff cites to New Mexico case law.

The issue in *Coeur d'Alene* was whether the Occupational Safety and Health Act, a statute of general applicability silent as to its application to tribes, applied to the Couer d'Alene tribal farm, a commercial enterprise wholly owned by the Coeur d'Alene Tribe, which sold produce on the open market outside of tribal lands and employed non-Native Americans. To address that issue, the Ninth Circuit applied the principle in *Federal Power Commission v. Tuscarora Indian Nation*, 362 U.S. 99 (1960) which states that "general Acts of Congress apply to Indians as well as to all others in the absence of a clear expression to the contrary...." *Id*. at 120. The Ninth Circuit in *Coeur d'Alene* went on to hold that when a statute of general applicability is silent with respect to tribes, that statute will not apply to tribes if "(1) the law touches 'exclusive rights of self-governance in purely intramural matters'; (2) the application of the law to the tribe would 'abrogate rights guaranteed by Indian treaties'; or (3) there is proof 'by

legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations....'  In any of these three situations, Congress must expressly apply a statute to Indians before [a court] will hold that it reaches them." *Coeur d'Alene*, 751 F.2d at 1116 (quoting *United States v. Farris*, 624 F.2d 890, 893-94 (9th Cir. 1985)).  In *Chickasaw Nation*, the district court likewise applied the *Tuscarora/Coeur d'Alene* test to determine if the Internal Revenue Code, another statute of general applicability, should apply to tribes.

The issue of whether a statute of general applicability should apply to a tribe or tribal entity is distinct from the issue in this case, i.e., whether a tribal entity enjoys sovereign immunity from suit.  The United States Supreme Court in *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 755 (1998) held that the application of substantive state laws to tribal conduct occurring outside the reservation was not the same as saying "that a tribe no longer enjoys immunity from suit."  In other words, "[t]here is a difference between the right to demand compliance with state laws and the means available to enforce them."  *Id*. ("In *Potawatomi*, for example, we reaffirmed that while Oklahoma may tax cigarette sales by a Tribe's store to nonmembers, the Tribe enjoys immunity from a suit to collect unpaid state taxes.")(citations omitted)).  *See also Florida Paraplegic Ass'n v. Miccosukee Tribe,* 166 F.3d 1126, 1130 (11th Cir. 1999)("[W]hether an Indian tribe is subject to a statute and whether the tribe may be sued for violating the statute are two entirely different questions.").  Because *Couer d'Alene* and *Chickasaw Nation* do not address the issue of tribal sovereign immunity and only address the issue of applicability of a general statute to a tribe, those cases do not support Plaintiff's argument that Defendant lacks tribal sovereign immunity.

In *Myrick*, the Plaintiff, a Native American living on the Devils Lake Sioux reservation, sued Devils Lake Sioux Mfg. Corp. (DLSMC) under Title VII, under the ADEA, under the Fair

Labor Standards Act, and for breach of contract. The Devils Lake Sioux tribe owned only 51% of the DLSMC while a Delaware corporation owned 49% of the DLSMC. The DLSMC argued that the Title VII claim should be dismissed because of the Indian tribe exception provided in 42 U.S.C. §2000e(b) of Title VII (the term "employer" does not apply to Indian tribes), and the ADEA claim should be dismissed because it does not apply to businesses on the reservation. The issue decided by the district court, however, appeared to be whether the "Federal District Court must decline jurisdiction over a dispute involving the activities of non-Indians or Indians arising on Indian reservations" if the Plaintiff has failed to first exhaust tribal court remedies. 718 F.Supp. at 754. The district court held that it had jurisdiction in that case because: "First, there is no attack or challenge to the jurisdiction of the tribal court. Second, the tribe or an arm of the tribe is not a party. In fact, the present case predominately presents issues of federal law." *Id*. at 755.

     An important distinction between *Myrick* and this case is that Defendant is wholly owned by the Chickasaw Nation while the DLSMC was not wholly owned by a tribe and was not even considered an arm of the tribe. Moreover, the *Myrick* court did not address the issue presented here of whether a federally chartered §503 tribal corporation wholly owned by a tribe can assert tribal sovereign immunity. Finally, *Myrick*, a district court case from another federal circuit, simply has no precedential value in this case. *Myrick* is, for these reasons, not persuasive authority for concluding that Defendant lacks tribal sovereign immunity.

     In *Roberson*, the plaintiff sued the Warm Springs Forest Products Industries (WSFPI), a business owned and operated by the Confederated Tribes of the Warm Springs Reservation, and others under the Labor Management Relations Act. The district court observed that "[i]f WSFPI is operated by the Confederated tribes in its governmental capacity, it shares the tribe's

sovereign immunity. If WSFPI is operated, however, under the section 477 corporate charter, it is subject to suit by reason of the 'sue and be sued' clause." 103 L.R.R.M. 2749. The first situation described by the district court is self-evident. The district court, however, implicitly acknowledged that in the second situation there was tribal sovereign immunity by virtue of the §477 corporate charter which was then unequivocally waived by the tribe's inclusion in the corporate charter of a "sue and be sued" clause. *See Sac and Fox Nation v. Hanson*, 47 F.3d 1061, 1064 (10th Cir. 1995)(the court must first decide if there is tribal sovereign immunity before deciding the question of waiver of tribal sovereign immunity). In fact, *Roberson* supports the proposition that §477 corporations enjoy tribal sovereign immunity absent an unequivocal waiver of that immunity in the corporate charter. *See also Sanchez v. Santa Ana Golf Club, Inc.*, 2005-NMCA-003 ¶6, 136 N.M. 682 (§477 corporations enjoy tribal sovereign immunity but may waive that immunity); Clay Smith, *Tribal Sovereign Immunity: A Primer*, 50-MAY Advocate (Idaho) 19, 20 (2007)("section [477] corporations retain their tribal status–and, accordingly, sovereign immunity in the absence of a 'sue and be sued' waiver...."). Analogizing Defendant's status as a §503 corporation to WSFPI's status as a §477 corporation, the Court determines that, like WSFPI, Defendant enjoys tribal sovereign immunity unless there is an unequivocal waiver of tribal sovereign immunity. Since the Defendant's corporate charter unequivocally waives tribal sovereign immunity in only limited circumstances not applicable to this case, *Roberson* actually supports Defendant's contention that it retains tribal sovereign immunity due to its status as a §503 tribal corporation.

*NAD* also mirrors *Roberson*. In *NAD*, the district court "reasoned that '[i]f [Seneca-Cayuga Tobacco Company, known as] SCTC[,] is an enterprise of the Tribe (as a governmental entity), immunity has not been waived. If SCTC is an enterprise of the [§503] Tribal

Corporation, immunity has been waived by virtue of the Sue and Be Sued Clause in the Corporate Charter.'" 546 F.3d at 1291. As in *Roberson*, there is necessarily tribal sovereign immunity under either situation, whether SCTC is considered a governmental enterprise of the Tribe or is considered a commercial enterprise of the §503 tribal corporation. Defendant readily falls into the second situation as a §503 tribal corporation. Consequently, Defendant has tribal sovereign immunity subject only to any unequivocal waivers of that immunity in the corporate charter. As already stated, the waivers of tribal sovereign immunity in Defendant's corporate charter do not apply to this case. *NAD*, therefore, supports Defendant's assertion that as a §503 corporation wholly owned by the Chickasaw Nation it enjoys tribal sovereign immunity in this case.

    Finally, Plaintiff also argues that under New Mexico case law, tribal sovereign immunity does not extend to claims by non-Native Americans arising from a tribal enterprise's conduct occurring outside of the reservation. *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 759 (1998)*,* the controlling United States Supreme Court precedent, has clearly established that tribes enjoy tribal sovereign immunity from suit by a non-Native American entity no matter if the actions by the tribe "involve[d] governmental or commercial activities and whether they were made on or off a reservation." 523 U.S. at 760. Interestingly, the New Mexico cases Plaintiff cites to were decided prior to *Kiowa*. *See DeFeo v. Ski Apache Resort*, 120 N.M. 640, 904 P.2d 1065 (Ct. App. 1995); *Padilla v. Pueblo of Acoma d/b/a Sky City Contractors*, 107 N.M. 174, 754 P.2d 845 (1988). The New Mexico courts have since recognized that *Kiowa* is the controlling law. *See Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012 ¶¶25, 132 N.M. 207, *cert. dismissed*, 536 U.S. 990 (2002)(*Kiowa* implicitly overruled *Padilla*; discussing *Kiowa).* Furthermore, tribal sovereign immunity is a matter of federal law thereby making any reliance

on state case law interpretations of federal law and cases questionable. *See Kiowa*, 523 U.S. at 756 ("tribal immunity is a matter of federal law and is not subject to diminution by the States."). Plaintiff's reliance on New Mexico case law is without merit.

> b. *Application of Tribal Sovereign Immunity when an Entity is a Subordinate Economic Organization (or Arm or Division) of a Tribe*

Plaintiff argues next that Defendant is not a subordinate economic organization of the Chickasaw Nation, i.e., an arm or division of the Chickasaw Nation, and thus cannot enjoy the tribal sovereign immunity which shields the Chickasaw Nation from suit. To support this argument, the Plaintiff cites to *NAD; Dixon v. Picopa Const. Co.*, 160 Ariz. 251, 772 P.2d 1104 (1989); and *Johnson v. Harrah's Kansas Casino Corp.*, 2006 WL 463138 (D. Kan.).[3] In citing to *NAD*, Plaintiff asserts that the Tenth Circuit focused on whether the tribal business entity, SCTC, was an arm or division of the Seneca-Cayuga Tribe: if SCTC was a division of the Seneca-Cayuga Tribe, then SCTC would be entitled to tribal sovereign immunity. The Tenth Circuit acknowledged that "[t]ribal immunity extends to subdivisions of a tribe, and even bars suits arising from a tribe's commercial activities." 546 F.3d at 1292 (citations omitted). In describing the issue on appeal in *NAD*, the Tenth Circuit stated:

> It is undisputed that Congress has not abrogated the immunity of either SCTC or the Seneca-Cayuga Tribe. It is also undisputed that the Seneca-Cayuga Tribe has unequivocally waived its own immunity via the "sue or be sued" clause in the [§503] Corporate Charter-but only with respect to the actions of the Tribal Corporation, and not the actions of the Tribe. ... On appeal, the primary issue in dispute is factual: whether SCTC is a division of the Tribal Corporation or of the Tribe.

*Id*. at 1293 (citations and footnote omitted). In other words, the Tenth Circuit examined whether

---

[3] Of course, *Dixon* is of little precedential value to this Court because it is a state case from outside of New Mexico and the Tenth Circuit. Also, as an unpublished federal district court case, *Johnson* likewise provides little precedential value. Nevertheless, the Court will address the applicability of these cases to the case at hand.

SCTC was a division of the Tribe in which case SCTC would necessarily enjoy tribal sovereign immunity as a governmental entity or whether SCTC was a division of the tribal corporation in which case the "sue or be sued" clause in the corporate charter waived tribal sovereign immunity.  As noted previously, in either situation the SCTC had tribal sovereign immunity due to either its status as a division of the Tribe or as a division of the §503 tribal corporation (subject, of course, to any unequivocal waivers like a "sue or be sued" clause in the corporate charter).  The Tenth Circuit's focus on whether SCTC was a division of the Tribe or the tribal corporation to determine the applicability of the waiver of tribal sovereign immunity found in the corporate charter's "sue or be sued" clause distinguishes it from this case where waiver is not an issue but rather the issue is whether there is tribal sovereign immunity to begin with.  *NAD*, therefore, is not helpful in supporting Plaintiff's argument that Defendant does not enjoy tribal sovereign immunity and in fact, bolsters Defendant's assertion that it has tribal sovereign immunity.

*Dixon* involved whether the Picopa Construction Co., a corporation formed under the laws of the Salt River Pima-Maricopa Indian Community, a tribe, was entitled to tribal sovereign immunity.  The Arizona court examined and applied the "subordinate economic organization" doctrine to determine that Picopa Construction Co. was not a subordinate economic organization of the Tribe and was, therefore, not entitled to tribal sovereign immunity.  The subordinate economic organization doctrine examines various factors in deciding if a tribal entity is an arm

or division of a tribe which would be subject to tribal sovereign immunity.[4]  In *Johnson*, the district court applied the subordinate economic organization doctrine to determine whether Harrah's Kansas Casino Corporation, a non-tribal entity, should be considered an arm or division of the Prairie Band Potawatomi Nation and given tribal sovereign immunity.

Both *Dixon* and *Johnson* are distinguishable from this case in one very important way: in both cases, the business entities were was not chartered under either §503 or §477.  In particular, *Johnson* did not even involve a tribal corporation of any kind.  With respect to a tribal entity incorporated under tribal law, like in *Dixon*, the "principal legal difference" between tribal entities incorporated under their own tribal law or state law and §477 tribal corporations "is that, while section [477] corporations retain their tribal status–and, accordingly, sovereign immunity in the absence of a 'sue and be sued' waiver–the other species of corporations are not imbued automatically with such status" and so a subordinate economic organization test should be applied to determine the tribal status of those other kinds of corporations.  Clay Smith, *Tribal Sovereign Immunity: A Primer*, 50-MAY Advocate (Idaho) 19, 20-21 (2007).  Consequently, a subordinate economic organization test is not relevant to an entity already incorporated under

---

[4]Those factors include: "(1) the announced purpose for which the entity was formed; (2) whether the entity was formed to manage or exploit specific tribal resources; (3) whether federal policy designed to protect Indian assets and tribal cultural autonomy is furthered by the extension of sovereign immunity to the entity; (4) whether the entity is organized under the tribe's laws or constitution rather than federal law; (5) whether the entity's purposes are similar to or serve those of the tribal government; (6) whether the entity's governing body is comprised mainly of tribal officials; (7) whether the tribe has legal title or ownership of property used by the entity; (8) whether tribal officials exercise control over the administration or accounting activities of the organization; (9) whether the tribe's governing body has power to dismiss members of the organization's governing body, and (10) whether the entity generates its own revenue, whether a suit against the entity would impact the tribe's fiscal resources, and whether it may bind or obligate tribal funds." *Johnson*, 2006 WL 463138 at *4.

§477 and by analogy under §503.[5]  In sum, the Court concludes that Plaintiff has failed to carry his burden of demonstrating that the Defendant does not enjoy tribal sovereign immunity due to its §503 corporate status and that this Court, therefore, has subject matter jurisdiction.  Having established that there is tribal sovereign immunity which the Chickasaw Nation has not unequivocally waived with respect to the claims raised in this lawsuit, the Court turns to the next question which is whether Congress has unequivocally abrogated that immunity in Title VII and the ADEA.

> 2. *Has Congress Unequivocally Abrogated Defendant's Tribal Sovereign Immunity in Title VII?*

Defendant also contends that Congress has not abrogated Defendant's tribal sovereign immunity in Title VII because Title VII specifically exempts Indian tribes from the definition of employers subject to Title VII.  *See* 42 U.S.C. §2000e(b)("The term 'employer' ... does not include ... an Indian tribe....").  Plaintiff asserts, on the other hand, that the plain language of §2000e(b) specifically exempts only "Indian tribes," not tribal businesses like Defendant, from the definition of employers.  Plaintiff refers to legislative history wherein United States Senator Karl Mundt who introduced the amendment exempting Indian tribes from the definition of employer in Title VII explained:

---

[5]"Because section [477 and by analogy section 503] charters may include immunity waivers, often referred to as 'sue and be sued' provisions, disputes have arisen over whether a particular activity was undertaken by the tribal corporation–which could be sued–or the tribe itself–which could not." *Id*. at 20.  To resolve these disputes, courts use a multi-factor inquiry similar to the subordinate economic organization inquiry. *Id*. at 21.  Since there is not a "sue or be sued" clause in Defendant's §503 corporate charter applicable to this case, there is no need to use a multi-factor inquiry, like the Tenth Circuit did in *NAD,* to determine if Defendant is a division of the Chickasaw Nation or a division of the §503 corporation subject to the "sue or be sued" waiver of tribal sovereign immunity.

13

> This amendment would provide to American Indian tribes in their capacity as a political entity, the same privileges accorded to the U.S. Government and its political subdivisions, to conduct their own affairs and economic activities without consideration of the provisions of the bill.

110 Cong. Rec. 13702 (1964), quoted in *Dille v. Council of Energy Resource Tribes*, 801 F.2d 373, 375 (10th Cir. 1986)(emphasis added)("Senator Mundt's comments show that the purpose of this exemption was to promote the ability of sovereign Indian tribes to control their own economic enterprises.")(emphasis added).[6]

Defendant, on the other hand, does not argue that it should be considered an "Indian tribe" subject to exemption from Title VII. The crux of Defendant's argument is that it retains tribal sovereign immunity with respect to Title VII lawsuits because Congress did not unequivocally abrogate that immunity in Title VII. Plaintiff fails to address this specific tribal sovereign immunity argument. Instead, Plaintiff inappropriately conflates the distinct concepts of tribal sovereign immunity and Title VII's exemption of Indian tribes. *See Johnson v. Choctaw Management/Services Enterprise*, 149 Fed. Appx. 800, 802 (10th Cir. 2005)("Johnson's argument conflates the doctrine of tribal immunity and Title VII's express exemption of Indian tribes from its coverage."). As noted above, the applicability of a statute to a tribe is a separate issue from the issue of tribal sovereign immunity. Moreover, in addressing tribal sovereign immunity in the Title VII context, the Ninth Circuit expressly held that "Congress has not clearly abrogated tribal sovereign immunity in Title VII cases." *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1159 (9th Cir. 2002). Plaintiff has failed to convince

---

[6]Additionally, Plaintiff notes that Title VII does not apply to businesses or enterprises on or near an Indian reservation which give preferential treatment in hiring persons living on or near an Indian reservation. 42 U.S.C. §2000e-2. This provision, however, is not relevant to the facts of this case.

14

the Court that Congress has unequivocally abrogated tribal sovereign immunity with respect to Title VII claims.  Hence, the Court does not have subject matter jurisdiction over the Title VII claims.

*3. Has Congress Unequivocally Abrogated Tribal Sovereign Immunity in the ADEA?*

Defendant further asserts that Congress has not unequivocally abrogated Defendant's tribal sovereign immunity with regard to the ADEA.  Plaintiff argues that the ADEA is a statute of general applicability and that the *Tuscarora/Coeur d'Alene* test should be used to determine whether the ADEA applies to Defendant.  Once again, Plaintiff inappropriately conflates the two distinct and separate concepts of applicability of a statute to a tribe and tribal sovereign immunity.  Furthermore, the Tenth Circuit has specifically held that Congress did not abrogate tribal sovereign immunity when it enacted the ADEA.  *E.E.O.C. v. Cherokee Nation*, 871 F.2d 937, 939 (10th Cir. 1989).  *See also Garcia v. Akwesasne Housing Authority*, 268 F.3d 76, 86 (2nd Cir. 2001)(regardless of applicability of the ADEA to tribes, Congress did not abrogate tribal immunity under the ADEA).  Plaintiff has, therefore, failed to carry his burden of showing that this Court has subject matter jurisdiction over the ADEA claims.

*C.  Conclusion*

As a §503 corporation wholly owned by the Chickasaw Nation, Defendant is entitled to tribal sovereign immunity.  Moreover, the Chickasaw Nation has not unequivocally waived that immunity in its corporate charter, or otherwise, with respect to the claims brought in this lawsuit. In addition, Congress has not abrogated that tribal sovereign immunity through its enactment of Title VII or the ADEA. Consequently, this lawsuit should be dismissed for lack of subject matter jurisdiction.

IT IS ORDERED that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 9) is granted and this case will be dismissed for lack of subject matter jurisdiction.

_____
SENIOR UNITED STATES DISTRICT JUDGE